## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| DEBBIE MAIR,<br><br>     *Plaintiff*,<br><br>     v.<br><br>MILFORD POLICE OFFICER SUSAN CLARK, *et al.*,<br><br>     *Defendants*. | Case No. 3:24cv410 (MPS) |

## <u>RULING ON DEFENDANTS' MOTION TO DISMISS</u>

The plaintiff, Debbie Mair, proceeding *pro se*, brings this action against numerous Milford police officers alleging violation of her civil rights under 42 U.S.C. § 1983. The defendants have filed a motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6).[1] ECF No. 42. For the reasons that follow, the motion is granted in part and denied in part.

## I.      Factual Allegations

The plaintiff commenced this action on March 21, 2024. ECF No. 1. The operative complaint, the Second Amended Complaint, which was filed on November 15, 2024 (ECF No. 39), is sprawling, disjointed, and extremely hard to understand. The plaintiff's allegations and claims are far from clear.[2]

The following facts, taken from the operative complaint, are accepted as true for the purpose of this motion.

---

[1] The defendants have filed and served the required "Notice to Self-Represented Litigant" under Local Rule 12. See ECF No. 42-2.

[2] The plaintiff did not file a proper opposition to the motion to dismiss. Her submission in response to the motion, ECF No. 44, is in the form of a complaint, which is hard to decipher and appears to be largely duplicative of ECF No. 39. In any event, although improper, because of her *pro se* status, the Court has considered the allegations in the submission.

The plaintiff is "an African American female of Jamaican national origin." ECF No. 39 at 1.[3]  She resides in Milford, Connecticut. *Id.*  The complaint arises from the plaintiff's dispute with her neighbors and her encounters with the police.  The majority of the allegations in the complaint occurred prior to March 21, 2021, and therefore are time-barred because they are beyond Connecticut's three year statute of limitations. *Connelly v. Komm,* 2021 WL 5359738, at *3 (D. Conn. Nov. 16, 2021) ("The statute of limitations for claims in Connecticut under section 1983 ... is three years").  I therefore do not set forth these allegations in detail but provide the following summary:

The plaintiff alleges that when new neighbors moved in next door in 2017, "they began causing Plaintiff trouble," *id*., including breaking into her home, which resulted in the plaintiff's various encounters with the police. *See, e.g.*, ECF No. 39 at 4 (allegation that her home was broken into June 2019); ECF No. 44 at 5 (plaintiff complained to police that the neighbors "entered her home without permission and se[t] [up] surveillance cameras inside and outside my house").  She alleges that the defendants "perceived plaintiff as having a mental illness." *Id.* at 7, 26.

The plaintiff also alleges interactions with Milford police officers that were unrelated to her neighbors, s*ee, e.g.,* ECF No. 39 at 6, 37 (2019 encounters), *id.* (May 2020 incident); *id.* at 12 (December 2020 encounter); *id.* at 37 (in January 2020, a police officer stopped her and "checked her pocket for stolen mail.").  She also alleges that officers failed to make arrests of others who were harassing her.  See ECF No 39 at 10-11.  She alleges her complaints were dismissed and "mental illness was documented in all [her] complaints." *Id.* at 38.  Many of her allegations concern a February 8, 2020 incident in which she was arrested and apparently transported to Yale for mental health reasons, which she alleges resulted in the creation of a "fake medical record"

---

[3] Because the allegations in the complaint are not organized in consecutive numerical paragraphs, I cite to the ECF generated page numbers of the complaint.

that states that she was committed. *Id.* at 5, 8, 13, 32. She also alleges that on August 3, 2020, Officers Noss and Barbour arrested her with "no probable cause" "for allegedly yelling a racial slur at passing pedestrians." *Id.* at 14, 28.

With regard to the allegations *after* March 21, 2021, the plaintiff alleges:

On April 22, 2021, Officer Ruggiero banged on her car window and "falsely accused me of yelling at Zoltan [Krasni], whose race and color [is] white." ECF No. 39 at 13. He and other officers "followed me home and surrounded my home with police SUV and police trucks." *Id.* The police report of the incident was "tamper[ed] with and altered." *Id.*

On June 6, 2021, Napaul Kingsley was arrested for assaulting the plaintiff and damaging her eyes. *Id.* at 10. He continues to follow her. *Id.* at 12. On June 9, 2021, Officer Jock went to the plaintiff's home and falsely accused her of being on property belonging to a relative of Kingsley. *Id.* at 9, 27. Jock threatened and harassed her. *Id.* at 10. She filed a civil complaint but it was dismissed. *Id.*

On August 8, 2021, the plaintiff was chased by a man named Melvin Moral, who cursed at her and physically assaulted her. *Id.* at 7. Moral's wife called the plaintiff names. *Id.* Officer MacMahon refused to make an arrest. *Id.* But after the Plaintiff complained, Moral was arrested and convicted. *Id.* at 8.

From September 2021 to March 22, 2022, the defendants "share[d] plaintiff['s] fake medical record." *Id.* at 32.

On October 7, 2021, the plaintiff "was arrest[ed] for failure to appear for the August 3, 2020 arrest." ECF No. 39 at 14. The charges underlying her August 3, 2020 arrest "were dismissed on or about March 22, 2022." ECF No. 39 at 14.

On July 5, 2024, the plaintiff noticed that her tire was damaged and took her vehicle to Costco. *Id.* at 6. A Costco employee told her that her tire had been cut. *Id.* She called the police. Officers Weymer and Lacry told plaintiff that the police "will not look at the tire at Costco." *Id.*

## II.    Legal Standard

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), I must determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). I accept as true all of the complaint's factual allegations when evaluating a motion to dismiss, *id.*, and "draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (citation omitted).

Although a *pro se* complaint must be liberally construed "to raise the strongest arguments" it suggests, *pro se* litigants are nonetheless required to "state a plausible claim for relief." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (brackets, internal quotation marks, and citations omitted). "[A] liberal interpretation of a *pro se* civil rights complaint may not supply essential elements of the claim that were not initially pled." *Darby v. Greenman*, 14 F.4th 124, 130 (2d Cir. 2021).

## III.    Discussion

When the plaintiff's complaint is liberally construed, the plaintiff appears to allege false arrest and malicious prosecution under the Fourth Amendment, violation of the Equal Protection

4

Clause, and violation of the right to privacy under the Fourteenth Amendment.  The plaintiff also alleges a state law claim under Connecticut's Fair Employment Practices Act ("CFEPA").

***Fourth Amendment***

The plaintiff alleges she was arrested without probable cause on August 3, 2020 by Officers Noss and Barbour and that the charges were subsequently dismissed on March 22, 2022.  ECF No. 39 at 14, 15, 28.[4]  She also alleges malicious prosecution with regard to this arrest.  *Id.* at 14.

To state a false arrest claim under the Fourth Amendment, "a plaintiff must show: (1) the defendant intentionally arrested him or had him arrested; (2) the plaintiff was aware of the arrest; (3) there was no consent for the arrest; and (4) the arrest was not supported by probable cause." *Cornish v. Town of Bloomfield*, 2023 WL 9698029, at *4 (D. Conn. Dec. 15, 2023).  "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).

To state a claim for malicious prosecution, a plaintiff must prove four elements: (1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice.  *Spears v. New Haven Police Dep't*, 2021 WL 1857264, at *4 (D. Conn. May 10, 2021).

The defendants argue that the Fourth Amendment claims should be dismissed because the officers the plaintiff alleges arrested her, Barbour and Noss, and who presumably "initiated or

---

[4] The plaintiff also alleges that she was arrested on October 7, 2021 for failure to appear for the August 3, 2020 arrest. ECF No. 39 at 31.  But as the defendants noted in their prior motion to dismiss, ECF No. 31-1 at 16, she did not (and does not) allege that probable cause was lacking as to this arrest, a necessary element of a Fourth Amendment claim. The plaintiff also alleges that Officer Ruggiero followed her home and surrounded her car and home, *id*. at 13, but that too fails to state a false arrest claim.

procured the institution of criminal proceedings against [her]," *Spears*, 2021 WL 1857264, at *4, are not named as defendants.  ECF No. 42-1 at 12.  I agree that the claims should be dismissed. *See Harte v. City of New York*, 2019 WL 1492912, at *3 (E.D.N.Y. Apr. 4, 2019), *aff'd*, 799 F. App'x 96 (2d Cir. 2020) ("A false arrest claim, brought pursuant to Section 1983, requires a plaintiff to name the arresting officer(s) as a defendant"); *Alvarez v. City of New York*, 2012 WL 6212612, at *2 (S.D.N.Y. Dec. 12, 2012) (false arrest claim failed where the arresting officers were not named as defendants).  The false arrest claim fails for an additional reason – as noted above, it is time barred.[5]  "[A] Fourth Amendment false arrest claim accrues on the date of arrest." *Hamilton v. Perez*, 2021 WL 148889, at *2 (D. Conn. Jan. 15, 2021) (citing *Dancy v. McGinley*, 843 F.3d 93, 111 (2d Cir. 2016)).

### Equal Protection

The plaintiff alleges generally that the defendants discriminated against her on the basis of her "mental disability (perceived) [and] race (African American and color Black)."  ECF No. 39 at 36.  *See id.* at 4 (alleging that Milford police officers did not take her complaints seriously because she is an "African American woman of Jamaican national origin").

The defendants argue that the plaintiff has not plausibly pled any Equal Protection claims. ECF No. 31-1 at 17.  I agree.

The Fourteenth Amendment's Equal Protection Clause "requires state actors to treat similarly situated people alike."  *Grandal v. City of New York*, 966 F. Supp. 197, 203 (S.D.N.Y. 1997) (citing *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995)).  To state an equal protection claim, a plaintiff must allege that: (1) she was treated differently from similarly situated

---

[5] The defendants incorporate arguments they made in their earlier filed motion to dismiss. ECF No. 42-1 at 12.  The defendants argued in their prior motion to dismiss that the August 3, 2020 arrest was outside the statute of limitations. ECF No. 31-1 at 16.  The plaintiff did not alter her pleading in the operative complaint.

individuals, and (2) the discriminatory or different treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000). A plaintiff must show "purposeful discrimination ... directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citations omitted). *See Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000) ("To state a race-based claim under the Equal Protection Clause, a plaintiff must allege that a government actor intentionally discriminated against him on the basis of his race.")

Even when all the plaintiff's allegations are liberally construed, the complaint fails to set forth factual allegations to support an Equal Protection claim. The plaintiff fails to set forth factual allegations that raise an inference of discrimination. The complaint does not contain factual allegations that the plaintiff was treated differently than similarly situated white individuals or persons who are not perceived as mentally ill or that defendants intentionally discriminated against her. Rather, the complaint contains mere conclusory assertions that the defendants' alleged conduct was discriminatory, assertions that are insufficient to state an Equal Protection claim. *See Iqbal*, 556 U.S. at 678 (mere conclusory statements do not suffice).

***Continuing Violation***

Although as noted above, the complaint contains numerous allegations of incidents predating March 21, 2021, claiming that the defendant officers acted or failed to act based on the plaintiff's race and/or perceived mental illness, the plaintiff has not alleged any facts to warrant applying the continuing violation doctrine. A Section 1983 claim ordinarily "accrues when the plaintiff knows or has reason to know of the harm." *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009). "The continuing violation doctrine is an "exception to the normal knew-or-should-

have-known accrual date." *Id*. It only applies "where there has been "a series of separate acts that collectively constitute one unlawful [act]." *Id.* "In other words, there must be a 'cumulative,' rather than merely a continuing, injury." *Fuentes v. New York State Dep't of Corr. & Cmty. Supervision*, 2025 WL 1636199, at *8 (S.D.N.Y. June 9, 2025) (quoting *Shomo*, 579 F.3d at 182). Here, the alleged conduct is a series of discrete, unrelated acts by various different police officers. Therefore, the continuing violation doctrine does not apply.

### Equitable Tolling

Although a statute of limitations generally may be extended under the doctrine of equitable tolling, the plaintiff has not alleged a basis to equitably toll the three-year statute of limitations. A district court may toll the limitations period under the doctrine of equitable tolling "to prevent inequity." *In re U.S. Lines, Inc.,* 318 F.3d 432, 436 (2d Cir. 2003) (citations omitted). Equitable tolling is applied only in "rare and exceptional circumstances," where a party was prevented from timely performing a required act and where that party "acted with reasonable diligence throughout the period he [sought] to toll." *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005). "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass v. N.Y.C. Transit Auth*., 333 F.3d 74, 80–81 (2d Cir. 2003). Nothing in the plaintiff's complaint or response to the motion to dismiss suggests that she pursued her rights diligently as to any of her time-barred claims or was prevented from asserting her rights by some extraordinary circumstances.

### Right to Privacy

The plaintiff also alleges that the defendants "shared" a "fake medical record" in violation

of her "civil rights."  ECF No. 39 at 9, 11, 12, 16, 17.  The plaintiff's allegations arguably can be construed to allege a substantive due process claim under the Fourteenth Amendment.  Although most of the allegations concern incidents that occurred before March 21, 2021, the complaint alleges that on August 4, 2021, and from September 1, 2021 through March 22, 2022, the defendants "share[d] plaintiff['s] fake medical record."  ECF No. 39 at 30, 32.

"The Second Circuit has recognized a constitutional right to privacy in personal information—including information about the state of one's health—under the Fourteenth Amendment's Due Process Clause."  *Robbs v. DeCapua*, 2025 WL 1529317, at *4 (D. Conn. May 29, 2025) (internal quotation marks and citations omitted).  I infer from the complaint that the record at issue contains information about the plaintiff's mental health.  The Second Circuit has made it clear that "[m]edical information in general, and information about a person's psychiatric health ... is information of the most intimate kind."  *O'Connor v. Pierson*, 426 F.3d 187, 201 (2d Cir. 2005).

The defendants move to dismiss plaintiff's claims about disclosure of her medical record on the grounds that "HIPPA [sic] does not create a right of action," ECF No. 42, ECF No. 31-1 at 23, but in the operative complaint, the plaintiff has not cabined her claims to HIPAA violations.  See ECF No. 39 at 32 (alleging defendants violated her "civil rights" by disclosing her medical record).  The defendants make no other argument as to this claim.  Accordingly, the motion to dismiss is denied.

### *CFEPA*

The plaintiff alleges that the defendants violated CFEPA.  Specifically, the plaintiff alleges that the defendants violated Conn. Gen. Stat. § 46a-64(a) by sharing her medical record and by dismissing her complaints that her home had been broken into.  ECF No. 39 at 17, 38, 39.

Conn. Gen. Stat. § 46a-64(a) provides:

> It shall be a discriminatory practice in violation of this section: (1) To deny any person within the jurisdiction of this state full and equal accommodations in any place of public accommodation, resort or amusement because of race, creed, color, national origin, ancestry, sex, marital status, age, lawful source of income, mental retardation, mental disability or physical disability, including, but not limited to, blindness or deafness of the applicant, subject only to the conditions and limitations established by law and applicable alike to all persons; (2) to discriminate, segregate or separate on account of race, creed, color, national origin, ancestry, sex, marital status, age, lawful source of income, mental retardation, mental disability, learning disability or physical disability, including, but not limited to, blindness or deafness ....

The plaintiff's claims under § 46a-64(a) fail because this statute does not "prescribe a private right of action." *Green v. DGG Props. Co*., 2013 WL 395484, at *4 (D. Conn. Jan. 31, 2013). *See also Garcia v. Yale New Haven Hosp*., 2013 WL 5396435, at *3 (Conn. Super. Ct. Sept. 5, 2013) ("§ 46a–64(a)(1) and (2) have [only] been found to be penal in nature and not to afford a private cause of action") (citing cases).

**Leave to Amend**

"Under Fed. R. Civ. P. 15(a)(2), leave to amend should be freely given unless there is "any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The decision to grant or deny leave to amend is "within the trial court's discretion." *Id.* Here, the plaintiff has amended twice (ECF Nos. 27, 39)– and has filed what appears to be another complaint in response to the motion to dismiss, ECF No. 44, but has failed to cure the complaint's deficiencies, which were clearly noted in the defendants' earlier motion to dismiss. See ECF No. 31.[6] There is no indication that the plaintiff can plead additional

---

[6] I note that the plaintiff responded to the defendants' initial to motion (ECF No. 31) with a complaint. The operative complaint is a recycled version of this filing. Compare ECF No. 32 with ECF No. 39.

facts to make her Fourth Amendment and Equal Protection claims plausible or timely.  And as indicated, her CFEPA claim fails as a matter of law, so leave as to that claim would be futile.  *AEP Energy Servs. Gas Holding Co. v. Bank of America*, 626 F.3d 699, 726 (2d Cir. 2010) ("[l]eave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim").

## IV.     Conclusion

For the foregoing reasons, the defendants' motion to dismiss is granted as to the plaintiff's Fourth Amendment, Equal Protection, and CFEPA claims and those claims are dismissed with prejudice.  The motion to dismiss is denied as to the plaintiff's Fourteenth Amendment claim alleging disclosure of her medical record.

IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
       September 23, 2025

11